# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| BILLING ASSOCIATES NORTHWEST, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADDISON DATA SERVICES, LLC, et al.,<br><br>Defendants. | CASE NO. C20-1854 RSM<br><br>ORDER DISMISSING CLAIMS AND GRANTING LEAVE TO AMEND |

## I. INTRODUCTION

This matter is before the Court on two motions seeking dismissal of Plaintiff's claims against all defendants but one: Addison Data Services, LLC ("ADS"). Dkts. #16 and #17. The case arises out of a business arrangement between Plaintiff Billing Associates Northwest, LLC ("Billing Associates") and ADS. The pair sold submetering and billing services to Washington property owners and managers so that tenants could be billed for their individual usage even where utility providers only billed on a property-wide basis. In providing the services, the pair received money from tenants and remitted the money to the property owners or managers. However, ADS ultimately experienced difficulties, declared for bankruptcy, and left Billing Associates holding the bag.

ORDER – 1

Billing Associates now sues ADS and individuals and entities that allegedly managed or owned ADS. Billing Associates alleges that all of the defendants breached a fiduciary duty owed to Billing Associates and that the non-ADS defendants aided, abetted, facilitated, and covered up ADS' breach. The non-ADS defendants now seek dismissal, arguing that they are not subject to this Court's personal jurisdiction and that Billing Associates' claims fail because they have already been settled, are barred by an applicable statute of limitations, fail as a matter of law, and are not adequately alleged. Dkts. #16 and #17. Billing Associates opposes the motions to dismiss and argues that, at a minimum, it should be granted leave to amend and supplement its claims. Dkt. #21. Having considered the matter, the Court dismisses Billing Associates' claims against the moving defendants, but grants leave to file an amended complaint.

## II. BACKGROUND

### A. The Parties

In addition to its business partner ADS, Billing Associates has sued individuals Leslie W. Kreis, Jr. ("Kreis"), David Durham, Christian Harper ("Harper"),[1] Pat Craine, and Joe Craine and business entities Mendoza Line Capital, LLC,[2] Korenvaes Horizon Partners, L.P., and Corbett Capital LLC.[3] Dkt. #1 at ¶¶ 1–12. Because Billing Associates invokes the Court's diversity jurisdiction, it alleges that it is a citizen of Washington and that all defendants are citizens of states other than Washington. *Id.* But beyond alleging the citizenship of these non-

---

[1] Defendants indicate that Billing Associates wrongly named Christian Harper as "Christopher Harper" in the caption and referred to him, throughout the Complaint, as "Christopher Harper" and "Hooper." Dkt. #16 at 1 n.2.

[2] Defendants indicate that Billing Associates wrongly named Mendoza Line Capital, LLC as "Menedoza Line Capital, LLC" in the caption of this action. Dkt. #16 at 1 n.1.

[3] Billing Associates also names "Jane/John Does" as "fictitious names for persons receiving constructive trust property." Dkt. #1 at ¶ 11. Neither side addresses Jane/John Does.

ORDER – 2

ADS defendants, Billing Associates does not allege their specific relationships with ADS or, apart from Kreis and Harper, their substantive involvement in the events giving rise to its claims. More generally, Billing Associates simply alleges that the non-ADS defendants—including Kreis and Harper—were "owne[rs] and manage[rs]" of ADS. *Id.* at ¶ 31.

### B. Billing Associates, ADS, and Their Services

As noted, Billing Associates and ADS[4] provided services to Washington property owners and managers (the "Customers") that rented properties to multiple tenants. *Id.* at ¶ 14. These properties often received a single, property-wide bill from their utility providers without consideration to the individual usage of the tenants. *Id.* By working with Billing Associates and ADS, Customers were able to submeter the usage of their individual tenants. This afforded Customers the ability to pay the property-wide utility bills directly and to have ADS subsequently bill each tenant based on their proportional use of the utility services. ADS collected money from tenants directly and remitted the money to the Customers. *Id.* at ¶ 15. For the services, ADS was authorized to collect an additional fee (the "ADS Fee") from the tenants. *Id.*

The relationship between Billing Associates and ADS was governed by an agreement between them. Under the contract, Billing Associates essentially acted as a sales representative for ADS, entering into standardized contracts with Customers and serving as a local point of contact. *Id.* at ¶ 14. Meanwhile, ADS provided the submetering and billing services and managed payments and reimbursements. As compensation for its work, Billing Associates received a portion of the ADS Fee. Dkt. #20 at 4.

---

[4] The Complaint alleges that Billing Associates first entered a business relationship with "Addison Data Services, LLC, a Delaware limited liability company (ADS DEL)" and that ADS DEL subsequently "assigned its rights and delegated its duties under" the agreement with Billing Associates to ADS, now a Texas limited liability company. Dkt. #1 at ¶¶ 2, 14. For simplicity, the Court treats ADS as a single, Texas entity.

ORDER – 3

### C. Termination of Billing Associates' and ADS' Business Relationship

For unspecified reasons, Billing Associates terminated its business arrangement with ADS on June 20, 2014. Dkt. #1 at ¶ 20. At the same time, and contingent on their ability to negotiate and agree on material terms, Billing Associates "offered to continue its contractual relationship with ADS for 120 days so that Billing Associates could smoothly transition the [] Customers to a different payment center." *Id.* Any negotiations proved unsuccessful and instead, on July 18, 2014, ADS filed a bankruptcy petition, triggering an automatic bankruptcy stay. *Id.* at ¶¶ 21–24. "Between July 22 and July 24, 2014, [ADS' Chief Executive Officer Harper] and Billing Associates were in communication" with Harper offering to disburse collected funds to their Customers if Billing Associates would agree to enter a new agreement with a new business entity. *Id.* at ¶ 27. No such agreement was reached.

### D. ADS' Bankruptcy

Billing Associates alleges that Kreis signed ADS' bankruptcy petition as its "managing partner" and that the petition failed to schedule "any actions that ADS might have against any of its officers, directors, managers, members, or managing agents." *Id.* at ¶¶ 25, 28.[5] Nevertheless, Billing Associates alleges that ADS' bankruptcy estate had possible claims against the non-ADS defendants because ADS transferred Customers' money to its "owne[rs] and manage[rs]." *Id.* at ¶¶ 31–34, 40. These possible claims were investigated by the bankruptcy trustee but were not pursued further. *Id.* at ¶¶ 30–35. Ultimately, ADS' bankruptcy "was closed and terminated on December 27, 2016." *Id.* at ¶ 36.[6]

---

[5] Contradicting the Complaint, Billing Associates indicates that the bankruptcy petition actually listed "a potential claim against ADS' former president." Dkt. #21 at 7 n.3.

[6] The Complaint further details Billing Associates' attempts to obtain relief within the ADS bankruptcy in order to pursue claims that ADS and the ADS bankruptcy estate may have had against ADS' owners and managers—the non-ADS defendants. Dkt. #1 at ¶ 37. The Complaint

ORDER – 4

**E. This Action**

The primary claim advanced in Billing Associates' Complaint is that ADS, and its owners and managers, owed Billing Associates and their Customers a fiduciary duty upon receiving money from tenants and that ADS and the non-ADS defendants all breached their duties. *Id.* at ¶¶ 42–43. Billing Associates maintains that the breach resulted in Billing Associates paying Customers "$416,466.77 and suffer[ing] an additional over $847,000 in business losses." *Id.* at ¶ 44.[7] In addition to its primary claim, Billing Associates asserts claims against the non-ADS defendants for having "aided, abetted, facilitated and covered up ADS' breach of fiduciary duty." *Id.* at ¶ 49.

### III. DISCUSSION

The Court finds the Complaint wholly lacking, often to the point of confusion, and suffering from a multitude of deficiencies. Additionally, the Court notes that the non-ADS defendants are seeking dismissal of Billing Associates' claims on the basis that the Court lacks personal jurisdiction and also on the basis that Billing Associates, for several reasons, fails to state claims upon which relief can be granted. The Court ultimately finds the Complaint's allegations insufficient under Federal Rule of Civil Procedure 12(b)(6). However, because the Court struggles simply to determine the particulars of Billing Associates' claims and because the

---

alleges that those claims were never abandoned by the bankruptcy trustee and that Billing Associates was in the process of recovering those claims but that "the claims ADS might have against ADS' [m]anagers remains property of the [bankruptcy estate] and subject to the" automatic bankruptcy stay. *Id.* at ¶ 39. Needless to say, the potential claims were speculative at the time the Complaint was filed. In its response to the motions, Billing Associates indicates that further proceedings have occurred in the bankruptcy case and that, if granted leave, it intends to amend and supplement its Complaint in light of those proceedings. Dkt. #21 at 7 n.4, 17.

[7] Billing Associates also seeks to recover for similar losses incurred by two similar businesses—Billing Associates Northeast and Billing Associates Southeast. Dkt. #1 at ¶¶ 45–47. The Complaint alleges that those entities "have assigned their claims to Billing Associates" but does not plead the corporate form or the citizenship of those entities. *Id.*

ORDER – 5

Court determines that leave to amend should be granted, the Court does not address the additional issues raised by the motions at this time.

The Court recognizes the practical difficulties of learning the facts of a case and drafting a complaint adequately setting forth legal claims, often with filing deadlines looming. But the Complaint in this case appears to lack foundational analysis of Billing Associates' claims. The Court's expectations demand more. *See* LOCAL RULES W.D. WASH. LCR Preamble ("The judges of this district expect a high degree of professionalism from the lawyers practicing before them."). Billing Associates' counsel appears to concede that the Complaint is lacking in some regards. *See* Dkt. #21 at 17 (indicating an "intent to supplement the Complaint and, at the same time, amend the Complaint to clarify [Billing Associates'] cause of action to" address the issues raised in the motions). Billing Associates' claims do appear complex. But counsel's knowledge and research should enable the Court to understand them with less effort than was required at this stage of this case. Regardless, Billing Associates' briefing demonstrates an understanding of the underlying legal principles and the Court trusts that counsel will heed the arguments set forth in the motions and the issues noted by the Court to better set forth adequate claims in any amended complaint that may be filed.[8]

**A. Applicable Legal Standard**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also* FED. R. CIV. P.

---

[8] The Court does note and appreciate that Billing Associates' counsel attempted to reach agreement with defense counsel on delaying the Court's consideration of the motions until after an amended Complaint was filed. But even in the absence of agreement—whether or not reasonably withheld—counsel could have conserved judicial resources by filing a simple motion to amend, especially in light of the liberal standard by which such motions are judged.

ORDER – 6

8(a)(2). While considering a Rule 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The court is not required, however, to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 557). Absent facial plausibility, a plaintiff's claims must be dismissed.

**B. The Complaint Fails to Sufficiently State Business Associates' Claims**

The Complaint fails to adequately set forth claims upon which relief can be granted on several bases. First, Billing Associates fails to demonstrate that it has plausible claims against the non-ADS defendants. The central claim of Billing Associates' lawsuit is that the non-ADS

ORDER – 7

defendants illegitimately received money from ADS that in fact belonged to Customers. As currently stated, however, the Complaint's claims lack factual support. Billing Associates first alleges that "ADS may have transferred the [] Customers [sic] Money to benefit" the non-ADS defendants "directly or indirectly." Dkt. #1 at ¶ 33. But the Complaint immediately backtracks by indicating that after "all reasonable and proper inquiry" Billing Associates "could make no determination" whether "the [] Customers' Money" had been transferred to these defendants. *Id.* at ¶ 34. This position is changed again as Billing Associates alleges that it "received further information that leads it to reasonably believe": (1) "that ADS did transfer the [] Customers' Money to benefit the [non-ADS defendants] directly or indirectly" and (2) that "Customers' Money was taken by the [non-ADS defendants] with full knowledge that the money belonged to Billing Associates." *Id.* at ¶ 40. Billing Associates may not hide the ball in this manner.[9] If factual allegations support Billing Associates' conclusion, it may disclose them for the Court to consider. Without more, Billing Associates' allegations do not demonstrate plausible, as opposed to possible, claims against the non-ADS defendants.

Second, Billing Associates fails to establish that it may properly pursue the claims it asserts. Billing Associates specifically alleges that ADS received money belonging to Customers and was obligated to disburse that money to Customers. *Id.* at ¶ 40. While Billing Associates alleges that the non-ADS defendants also received money belonging to Billing Associates, Billing Associates previously specified that ADS segregated Customer funds from the ADS Fee. Dkt. #1 at ¶ 15. Billing Associates does not identify a basis on which it may assert claims that

---

[9] Billing Associates, in support of its opposition to the motions, indicates that it "contacted ADS' former president" who "reported that he and Harper were always compensated from monies that ADS controlled" and that he provided further reasons supporting Billing Associates' "reasonable belief [that] the [non-ADS defendants] benefitted from ADS improperly using [Customers'] money] to benefit themselves." Dkt. #21 at 8; Dkt. #24 (Declaration of Steven Michael Collier, former ADS president). Needless to note, these allegations are not reflected in the Complaint.

ORDER – 8

would appear to belong to its Customers as they involve money only due to Customers.[10] *See* Dkt. #21 at 2 (Billing Associates arguing that the action, "[i]n short," relates to ADS "breach[ing] its fiduciary duty to the [Customers] and that the [non-ADS defendants] aided and abetted ADS in breaching its fiduciary duty to the [Customers]"); *id.* at 6 ("ADS failed to deliver [Customers' money] to [Customers]").

Third, Billing Associates fails to attribute any individual actions to six of the eight non-ADS defendants. Billing Associates alleges that these defendants received Customer funds they knew they were not entitled to receive. Dkt. #1 at ¶ 40. But the Complaint does not make clear that Billing Associates' allegations are against each and every one of the non-ADS defendants. Conversely, Billing Associates' briefing appears to reveal a basis only for claiming that Kreis and Harper benefitted from the receipt of Customer money. *See* Dkt. #21 at 8 (alleging that Harper was compensated with ADS funds and that ADS relocated to property Kreis owned and controlled). Billing Associates argues that it is merely relying on permissible "information and belief" allegations. Dkt. #21 at 13. But, as Billing Associates notes, where "information and belief" allegations are used, the plaintiff must still "include 'a statement of the facts upon which the allegations are based.'" *Id.* (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n. 3 (D.C.Cir. 1994)) (citations omitted). Even if Billing Associates may rely on "information and belief" allegations, its Complaint does not contain adequate factual support for its beliefs.

Fourth, Billing Associates relies on arguments not supported by its Complaint. Billing Associates' briefing alludes to principal-agent theories and the obligations of bailees. Dkt. #21

---

[10] Billing Associates does allege that it made payments to Customers, possibly alluding to a theory of equitable subrogation without pleading the facts to support such a claim. *See Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 949 (5th Cir. 1999) ("Equitable subrogation is the legal fiction through which a person or entity, the subrogee, is substituted, or subrogated, to the rights and remedies of another by virtue of having fulfilled an obligation for which the other was responsible.").

ORDER – 9

at 14 ("Here, ADS was the [Customers'] agent hired to allocate, bill, and collect the [Customers' money] and [the ADS Fee] from the" Customers' tenants.); *id.* (arguing that "ADS owed a fiduciary duty to the [Customers] and the Billing Associates as a bailee of the [Customers' money]").[11] But Billing Associates does not make clear why it stands in the same position as its Customers. Similarly, Billing Associates' briefing points to a Texas corporate trust fund doctrine,[12] but that theory is unsupported by the allegations of the Complaint. Such claims may be possible, but the Complaint does not plead them.

### C. Leave to Amend

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). There is little doubt that Billing Associates' Complaint suffers from a multitude of deficiencies and defendant unsurprisingly argue that dismissal should be with prejudice.[13] But dismissal without leave to amend is a high hurdle. *See*

---

[11] There is some indication that Billing Associates was entitled to a portion of the ADS Fee such that ADS could have been a bailee for Billing Associates. But, focusing on the allegations of the Complaint, Billing Associates does not adequately allege that is the case.

[12] *See* Dkt. #21 at 15 (arguing that under doctrine and upon insolvency and cessation of business, "officers and directors hold the corporate assets in trust for the corporate creditors") (citing *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. Civ. App. 1973)). The Complaint does not allege that ADS ceased business.

[13] The moving defendants' best argument against granting leave to amend may well be that Billing Associates' claims fail because they are barred by a four-year statute of limitations under Texas law. *See* Dkt. #17 at 6–7; Dkt. #22 at 1–3. Billing Associates' response that ADS' bankruptcy stay tolled the statute of limitations may not be sufficient. Dkt. #22 at 2 (moving defendants replying that Billing Associates failed to provide any authority indicating that the bankruptcy stay applicable to claims against ADS also tolled the statute of limitations as to claims against individual owners and managers of ADS). However, due to the Court's uncertainty as to the claims asserted and the timeline of events ultimately alleged, the Court does not address the issue at this time.

ORDER – 10

*Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.") (quotation marks and citations omitted). At the same time, Billing Associates indicates that its investigation of its claims has continued and that it has additional factual allegations, and possibly claims, to include in an amended and supplemented complaint. Accordingly, the Court grants Billing Associates leave to amend its Complaint.

## IV. CONCLUSION

Accordingly, and having considered the motions, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that:

1. Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (Dkt. #17) is GRANTED. All of Plaintiff Billing Associates Northwest, LLC's claims against Defendants Leslie W. Kreis, Jr, Mendoza Line Capital, LLC, David Durham, Korenvaes Horizon Partners, L.P., Christian Harper, Corbett Capital LLC, Pat Craine, and Joe Craine are DISMISSED.

2. Plaintiff Billing Associates Northwest, LLC is granted leave to file an amended complaint within fourteen (14) days of this Order.

3. Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. #16) is DENIED, without prejudice, as moot.

DATED this 2nd day of July, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE