1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

BILLING ASSOCIATES NORTHWEST,
LLC, a Washington limited liability company,

7

Plaintiff,

8

v.

9
10
11
12
13
14
15
16

ADDISON DATA SERVICES, LLC., a
Texas limited liability company; LESLIE W.
KREIS, Jr., a Texas resident; MENEDOZA
LINE CAPITAL, LLC, a limited liability
company; DAVID DURHAM,
KORENVAES HORIZON PARTNERS, L.P,
a limited partnership; CHRISTOPHER
HARPER, a Texas resident; CORBETT
CAPITAL LLC, a limited liability company;
PAT CRAINE, a Texas resident; JOE
CRAINE, a Texas resident; and JOHN/JANE
DOES, fictitious names for persons receiving
constructive trust property,

Defendants.

CASE NO. C20-1854RSM

ORDER GRANTING MOTION TO
DISMISS AFTER REMAND

17
18

## I.    INTRODUCTION

19
20
21
22
23
24

This matter comes before the Court on Defendant Addison Data Services' ("ADS")
Second Motion to Dismiss the Second Amended Complaint, Dkt. #98, brought under Rule
12(b)(6).  Plaintiff Billing Associates Northwest ("Billing Associates") has filed an opposition.
Dkt. #99.  The Court has reviewed the materials and finds that oral argument is not necessary.
For the reasons stated below, the Court GRANTS Defendant's Motion and dismisses Plaintiff's
remaining claims without leave to amend.

## II.    BACKGROUND[1]

Plaintiff Billing Associates is a Washington limited liability company that provides contract procurement and sales representative services.  *See* Dkt. #43 at 4.  "ADS DEL" is a Delaware limited liability company that subsequently assigned its rights and duties to ADS, a Texas limited liability company. *Id.* at 6–7. ADS provides submetering and billing services to landlords. *Id.* at 2. On January 3, 2011, ADS and Billing Associates signed an agreement ("Agreement") for Billing Associates to sell ADS's services to Washington landlords ("Landlords").  *Id.* at 6; Dkt. #36-1. The Agreement states that Texas law applies to all legal issues. Dkt. #36-1 at ¶ 9.  ADS provided services to landlords by allocating property-wide utility bills between each tenant, billing each tenant for their share, and collecting payments on behalf of the landlords. *See* Dkt. #43 at 6. Pursuant to the Agreement, ADS was to deposit the payments received into a Trust Account and transfer its apportioned fees to its Operating Account.  ADS was owned and managed by the other Defendants in the case ("Remaining Defendants").  *See id.* at 8.

On June 20, 2014, Billing Associates terminated the Agreement due to alleged ADS breaches. *Id.* at 7. ADS filed for Chapter 7 Bankruptcy on July 18, 2014. *Id.* at 10–11. Subsequently, an automatic stay was ordered, and a Chapter 7 trustee ("Trustee") was appointed. Billing Associates filed a claim in the bankruptcy proceeding. A Settlement Agreement was reached in May 2015, in which Billing Associates' unsecured claims in the bankruptcy case were liquidated and parties agreed to a mutual release of all claims.  *See* Dkt. #36-4.  During the bankruptcy proceedings, Billing Associates suspected that ADS may have transferred funds from

---

[1] Except as otherwise noted, the following background facts are taken from Plaintiff's Second Amended Complaint, Dkt. #43, and accepted as true for purposes of ruling on this Motion to Dismiss.  All other facts come from documents incorporated by reference into the Second Amended Complaint or from Bankruptcy Court documents for which the Court may take judicial notice.

the Trust Account to its Operating Account and Remaining Defendants. *See* Dkt. #1 at 6; Dkt. #43 at 16. Billing Associates asserts that it could not investigate this further due to the automatic stay, which was in place until December 27, 2016. #43 at 16. After the stay was lifted, Plaintiff received further information revealing that ADS transferred funds for its own (and the Remaining Defendants' benefit) instead of reimbursing the landlords and Billing Associates. *Id.*

The bankruptcy case was reopened in mid-2020 at Billing Associates' request, asserting that its claims against Remaining Defendants were not listed in the initial petition. *Id.* at 17. On May 12, 2021, the Bankruptcy Court approved the sale of ADS's claims previously not administered to Billing Associates and subsequently a final report was filed on November 17, 2021. *See* Dkt. #36-5. The Bankruptcy Court closed the case for a second time on August 10, 2022. *See* Dkt. #36-7.

This case was originally filed on November 28, 2020. Dkt. #1. On July 2, 2021, the Court dismissed all claims with leave to amend. Dkt. #28. On November 16, 2022, the Court again dismissed all claims with leave to amend. Dkt. #42.

Plaintiff's Second Amended Complaint includes three causes of action. The first is for "breach of fiduciary duty" against ADS, alleging that "ADS was a bailee of identifiable monies that were owned by the Landlords and being held by ADS solely for the Landlords' benefit," and that Defendants owed Billing Associates and the Landlords a fiduciary duty as a result. Dkt. #43 at 18. The last two causes of action are against the remaining Defendants only. *See id.* at 19–20.

On February 22, 2023, the Court dismissed the Second Amended Complaint without leave to amend. Dkt. #59. Dismissal of claims against ADS was based on the settlement agreement, the statute of limitations, and Texas's one-satisfaction rule; dismissal of the Defendants other than ADS (the "Remaining Defendants") was based on a lack of personal jurisdiction. *See id.* at 8.

Plaintiff appealed and the Ninth Circuit affirmed in part and reversed in part. Dkt. #82. In its

summary conclusion, the Ninth Circuit stated:

> We affirm the district court's dismissal of the owner/manager
> defendants for lack of personal jurisdiction. We reverse the district
> court's rulings that the settlement agreement, the statute of
> limitations, and the one-satisfaction rule bar Billing Associates'
> claims. On remand, the district court should consider ADS's
> remaining arguments for dismissal.

*Id*. at 8. Defendant ADS now moves for dismissal based on its remaining arguments.

### III.    DISCUSSION

**A. Legal Standard under Rule 12(b)(6)**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as

true, and makes all inferences in the light most favorable to the non-moving party. *Baker v.*

*Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).

However, the court is not required to accept as true a "legal conclusion couched as a factual

allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the

plaintiff "pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed

allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility,

a plaintiff's claims must be dismissed. *Id*. at 570.

**B. Breach of Fiduciary Duty**

Defendant ADS argues that Plaintiff's one remaining claim is properly dismissed because

"(1) no fiduciary duties exist under Texas law based on the facts alleged; and (2) Texas law

specifically holds that a bailor/bailee relationship does not in and of itself create fiduciary duties." Dkt. #98 at 8.

The Court agrees with both points.

Under Texas law, a fiduciary relationship "exists where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 809 (5th Cir. 2017) (quoting *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980)). However, "[i]t is well settled that 'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997)). Texas law recognizes two types of fiduciary relationships, formal and informal. *Meyer*, 167 S.W.3d at 330-31. A formal fiduciary duty: "arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers." *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App. 2003) (citing *Insurance Co. of North Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)). Informal fiduciary relationships, "may arise when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Insurance Co. of North Am.*, 981 S.W.2d at 674; *see also Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citing *Jones*, 196 S.W.3d at 449). However, the Texas Supreme Court has stated:

> In order to give full force to contracts, we do not create such a relationship lightly. *See Thigpen*, 363 S.W.2d at 253. Accordingly, while a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit.

*Schlumberger Tech. Corp.*, 959 S.W.2d at 176-77.

Plaintiff fails to plead facts that could support a formal fiduciary duty. The Second Amended Complaint contains no allegations other than the parties having a routine, arms-length commercial contract. Although the Agreement established a bailment relationship between ADS and the Landlords, "A bailment generally does not create a formal, fiduciary relationship between bailee and bailor" under Texas law. *Prime Products, Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 637-38 (Tex. App. 2002) (citing *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App. 1998)). Plaintiff fails to address this or plausibly argue to the contrary in briefing. Accordingly, the Court finds that this claim cannot proceed under this theory.

An informal fiduciary relationship is also not plausibly plead on these facts. Plaintiff fails to plead that there was a fiduciary relationship existing prior to, and apart from, the agreement between the parties. To the contrary, the pleading indicates that the Agreement above was the full extent of the parties' relationship. Under Texas law, this is insufficient to plausibly plead an informal business duty, with or without a bailment relationship. *See Schlumberger*, *supra*. Again, Plaintiff fails to argue to the contrary in briefing. Instead, Plaintiff vaguely argues that ADS was an agent of the Landlords and that a "fiduciary relationship arises between an agent and a principal when the agent, without the knowledge and consent of the principal, exercises dominion and control over the principal's property sufficient to alienate the principal's right to the property." Dkt. #99 at 3 (citing *Crisman v. Crisman*, 85 Wash. App. 15, 22, 931 P.2d 163, 167 (1997)). This improperly relies on Washington law—the contract governing the relationship establishes that Texas law will apply. Plaintiff otherwise incorrectly analyzes Texas law on the issue of fiduciary relationships created by bailments and the application of that law to this case. *See Id*. at 4. Plaintiff fails to rebut the Texas legal authorities cited in ADS's Motion and summarized by the Court above.

Given all of the above, Plaintiff's remaining claim cannot proceed and is properly dismissed under Rule 12(b)(6).

**C. Leave to Amend**

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court finds that after multiple opportunities to amend, the above deficiencies cannot be cured and that leave to amend shall not be granted.

## IV.    CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that ADS's Motion to Dismiss, Dkt. #98, is GRANTED. Plaintiff's remaining claims are DISMISSED without leave to amend. All other pending Motions are STRICKEN. This case is CLOSED.

DATED this 18th day of June, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION TO DISMISS AFTER REMAND - 7